650 So.2d 354 (1995)
STATE of Louisiana
v.
Hilton BOND.
No. 94-KA-509.
Court of Appeal of Louisiana, Fifth Circuit.
January 31, 1995.
*355 John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Linda Davis-Short, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before GAUDIN and DUFRESNE, JJ., and JOHN C. BOUTALL, J. Pro Tem.
GAUDIN, Judge.
Appellant Hilton Bond was found guilty of unauthorized entry of an inhabited dwelling in violation of LSA-R.S. 14:62. He received a one-year sentence at hard labor, suspended, and he was placed on active probation for two years subject to conditions. We affirm.
In the early morning of August 23, 1992, Bond entered his ex-wife's apartment by breaking a window. Having suffered a "gash" on his leg which began to bleed profusely, he telephoned for medical assistance from inside her apartment. When officers responded to his call, they found him on the premises. At that time, his ex-wife was neither home nor had she given him permission to enter her apartment.
The six-person jury in the 24th Judicial District Court was unanimous in finding Bond guilty.
On appeal, Bond assigned these errors:
(1) the trial judge erred in allowing him to represent himself at trial;
(2) the trial judge erred in denying his motion for a continuance;
(3) the trial judge erred in allowing him to testify at trial without adequately advising him of his right not to testify;
(4) the trial judge erred in refusing to allow him to introduce letters which would *356 have supported his defense of implied consent; and
(5) there were errors patent.

ASSIGNMENT NO. 1
Here, Bond argues that it was reversible error for the trial judge to permit self-representation with the assistance of court-appointed counsel.
The sixth amendment to the United States Constitution gives the defendant in a criminal prosecution the right to represent himself.
Because an accused managing his own defense relinquishes many of the traditional benefits associated with the right to counsel, he must knowingly and intelligently forego those benefits in order to represent himself. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and State v. Carpenter, 390 So.2d 1296 (La.1980). Although no minimum requirements have been established for judging the sufficiency of a waiver of counsel, there must be a reasonable inquiry to establish on the record a knowing and intelligent waiver under the overall circumstances. See State v. Strain, 585 So.2d 540 (La.1991). Further, the record must show that a defendant waived his right "with eyes open" and with an awareness of the danger of self-representation. See State v. Harper, 381 So.2d 468 (La.1980).
In the following excerpt from the transcript, Mr. Williams is the prosecuting attorney, while Mr. Hafner is Bond's court-appointed lawyer.
"THE COURT:
Mr. Bond [defendant], you have something you would like to say?
MR. BOND:
Yes, sir, I would like to get my own attorney, and I'd like to file a motion to get this extended. I have contacted a lawyer I used before yesterday, but he wasn't able to come today. I feel like Mr. Hafner [appointed counsel] thinks that I'm guilty already, and he's been very rude to me. I've contacted a lawyer yesterday, and I've used him before on a civil case. Mr. Hafner has been very rude, and he thinks that I'm guilty already, and I don't think he can represent me.
MR. WILLIAMS [prosecutor]:
Judge, I object. This case has been set for trial, and it's ready for trial. The Court certainly has the right to let him represent himself.
MR. BOND:
I would rather have a lawyer.
THE COURT:
... I suggest to you, Mr. Bond, that you utilize Mr. Hafner's abilities on your behalf during this trial.
If you refuse to do that, you may represent yourself, but we're going to proceed with the trial.
MR. BOND:
It really doesn't look like he's on my side I'm sorry for having to have to say that, but it doesn't look like he's on my side, and I've already contacted someone else.
MR. WILLIAMS:
Judge, the state elects to proceed with the case against Hilton Bond in Case Number 93-4841.
THE COURT:
All right. We will have to get the jury panel up here. In the meantime, Mr. Bond, we are going to recess your case, and take up some other cases that are on the docket today.
In the meantime, would you please discuss this with Mr. Hafner, and we will get back to you shortly.
THE COURT:
Mr. Bond, have you come to any decision about what you want to do? Are you making a motion at this time to disqualify your counsel on the basis of ineffective counsel?
MR. BOND:
Yes, sir.
THE COURT:
And what is the basis for that? And I want to warn you before you say anything, that you shouldn't say anything that would be against your interest that transpired between you and your attorney. That is absolutely privileged communication.

*357 MR. BOND:
I understand, but he thinks that I'm already guilty, and I don't feel that he's really trying to help me. I feel like he's working against me. I feel that I would be better off with my own attorney, or if I even have to, to just represent myself.
THE COURT:
Well, having known Mr. Hafner by him trying a number of cases in this court, I know that Mr. Hafner would not take a position where he would do anything against the interest of any of his clients, to the extent of his abilities, which I regard as being considerable.
I believe that he is competent and able to represent you. And what happened is that you have applied for the appointment of an attorney to represent you on the ground that you could not afford a private attorney.
I believe the record reflects that you made Six Hundred and Fifty ($650.00) Dollars a month, and the appointment of an attorney to represent you was approved. You are entitled to be represented by an attorney.
The alternative for youI am going to deny your motion to replace Mr. Hafner on the grounds that you have stated for ineffectiveness of counsel. The alternative, now, is that you represent yourself, which I want to tell you would be absolutely against your interest.
Have you every tried a case before?
MR. BOND:
No, sir.
THE COURT:
Have you ever had any legal training, or any training of the law?
MR. BOND:
No, sir.
THE COURT:
Do you know what the words of "voir dire" means?
MR. BOND:
No, sir.
THE COURT:
Have you ever had any experience in selecting a jury?
MR. BOND:
No, sir.
THE COURT:
I want to make it absolutely clear to you that you are not competent to represent yourself in this case. This is a serious case, and there is a possibility that if you're convicted, you could receive jail time, serious jail time.
In my opinion, you should avail yourself of the services of Mr. Hafner. On the other hand, I cannot deny you the right to represent yourself if you knowingly, and intelligently, decide to do that. I need your decision now.
MR. BOND:
I don't want Mr. Hafner to represent me.
THE COURT:
Does that mean that you intend to represent yourself?
MR. BOND:
If I have to, I will.
THE COURT:
Well, I'm going to appoint Mr. Hafner to sit with you, and advise you in this matter in any case. You, obviously, don't know anything about cross-examining witnesses.
MR. BOND:
I have a list of questions that I would like answered.
THE COURT:
You better let Mr. Hafner ask them for you. You better let Mr. Hafner represent you.
MR. BOND:
I feel that he is against me. I feel that he thinks I am a criminal, and I feel like he thinks I should go to jail. It's like playing a football game with a quarterback who is getting paid by the other team.
I would like to get my attorney that I used in a lawsuit to represent me.
THE COURT:
You are entitled at all times to do that, but you come here on the day of the trial
MR. BOND:
I didn't meet him until Tuesday.

*358 MR. HAFNER:
Your Honor, I would like to put on the record that IDB, assigned this case to me about November of 1993.
Motions were filed, which were in the record on November the 30th, 1993. I sent a letter to the defendant on November the 24th, 1993. I left a message on the defendant's tape recorder on December the 10th, 1993. I talked to the defendant on the telephone on December the 21st, 1993.
At the defendant's request, I called his wife on December the 21st, 1993 ...
I met the defendant in court on January the 18th, 1994. I talked to the defendant's friend on January the 18th, 1994, about whether or not his wife is going to testify.
I reviewed the D.A.'s file on January the 18th, 1994; my stamp is in the file.
Also, the court should take note that the defendant is thirty-two (32) years of age, he is literate, and he has three (3) years of college.
MR. WILLIAMS:
Judge, I would like to add that I did provide open file discovery, and we discussed the charges before the bar today.
THE COURT:
Are you prepared to go to trial, Mr. Hafner?
MR. HAFNER:
Yes, I am, Your Honor.
MR. WILLIAMS:
... I strongly object to the case not being tried today.
THE COURT:
Mr. Bond, under the circumstances, do you elect to represent yourself?
MR. BOND:
Yes, sir.
THE COURT:
You are doing that against the advice of the Court, and I'm going to appoint Mr. Hafner to sit with you during this trial, and advise you. And you understand that you will be subject to the rules of evidence just like anyone else?
MR. BOND:
Yes, sir.
THE COURT:
All right, we will proceed. Let's bring in the jury."
Bond's decision to represent himself was knowingly and voluntarily made. His apparently able court-appointed counsel was prepared for trial and was ready and willing to be of assistance to Bond should he insist on self-representation.
Finally, regarding this assignment of error, we note that while an indigent defendant has the right to a lawyer, he does not have the right to a particular attorney. See State v. Harper, supra. This is especially true absent a showing that the court-appointed counsel is incompetent, unprepared or burdened with a conflict of interest.
The trial judge did not err in granting Bond the right to represent himself. The accused, who had three years of college, was fully advised of the problems he would face and the consequences of self-representation. He cannot now complain.

ASSIGNMENT NO. 2
Bond contends that the trial judge should have delayed the trial so that he could be represented by a lawyer he (Bond) had just contacted.
The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. A defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. Absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications. Once the trial date has arrived, decisions regarding substitution of counsel largely rest with the discretion of the trial court, and its rulings will not be disturbed in the absence of a clear showing of abuse of discretion. See State v. Seiss, 428 So.2d 444 (La.1983); and State v. Martin, 645 So.2d 190 (La.1994), wherein the Supreme Court of Louisiana stated that even if it would have been prudent for the trial judge to have granted a continuance, the denial of the motion was not *359 an abuse of the trial judge's wide discretion. One of the considerations was the preparation for trial by prior counsel. Bond's court-appointed lawyer had been assigned the case two months before trial. He had filed several pretrial motions on Bond's behalf. On the day of trial, court-appointed counsel told the trial judge he was ready to proceed.
This assignment of error has no merit.

ASSIGNMENT NO. 3
In this assignment of error, Bond contends that the trial judge did not adequately advise him of his constitutional right against self-incrimination; thus, he argues, his waiver of the right to remain silent was not knowing and voluntary.
During trial, Bond stated that he would testify. The following exchange occurred at a bench conference outside the hearing of the jury:
"THE COURT:
You may, of course, testify if you wish to, but you are not required to testify. The burden of proof in this case is on the District Attorney. If you do testify, whatever you say is part of the evidence, and the jury is justified in holding it against you if you say something that is prejudicial to you.
For instance, you said that you believe that your attorney believed that you were guilty. That would be prejudicial if you told that to the jury.
Because you are representing yourself, I have to be particularly careful to tell you that you are not required to testify. If you decide that you want to testify, I would suggest that you be very careful with what you say.
Do you want to advise him, Mr. Hafner?
MR. HAFNER:
My understanding is that Mr. Bond only has one DWI convictionI'm asking the D.A. now. Are there any other convictions?
MR. WILLIAMS:
No.
MR. HAFNER:
Now, Mr. Bond, he can ask you about that DWI conviction. So, it might be better for you to just get up there, and tell the jury right off about that.
THE COURT:
Anything else?
MR. BOND:
I do want to go ahead and testify.
THE COURT:
That's your decision."
Inasmuch as the trial judge straightforwardly told Bond that he was not required to testify, that the burden of proof was on the district attorney and that if he (Bond) did testify, any prejudicial testimony could be used against him, it is clear that Bond was adequately advised of his right against self-incrimination.

ASSIGNMENT NO. 4
When Bond's former wife (the state's primary witness) was on the stand being questioned by the defendant, the trial judge refused to allow into evidence letters he had written to his ex-wife. The letters, Bond says, would show that he and his former spouse were "getting along" and that they had remained on friendly terms after the divorce. He had reason to believe, Bond said, that she would not mind if he broke into her apartment while she was not there.
The trial judge ruled that the letters were not relevant. Such a ruling is not disturbed on appeal unless there was a distinct abuse of discretion. See State v. Mayeaux, 570 So.2d 185 (La.App. 5 Cir.1990), writ denied at 575 So.2d 386 (La.1991).
Here, we see no abuse of discretion. The former wife testified that Bond had no authority to force his way into the apartment; any letters showing that Bond and his ex-wife were "getting along" were not relevant.

ASSIGNMENT NO. 5
We conducted an error patent review and we note that while the sentencing transcript does not indicate that Bond is to be given credit for any time served in jail, the minute entry and commitment form show such credit. In the event that Bond violates his probation *360 and is ordered to serve one year in parish prison, he is to be given credit for time served.
AFFIRMED.