680 So.2d 64 (1996)
STATE of Louisiana
v.
Dwayne MITCHELL.
No. 95-KA-552.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1996.
Rehearing Denied October 17, 1996.
*65 William D. O'Regan, III, Assistant District Attorney, LaPlace, for Plaintiff/Appellee.
Endesha Juakali, New Orleans, for Defendant/Appellant.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Dwayne Mitchell, appeals his conviction for second degree murder. For the following reasons, we reverse and remand for further proceedings.

STATEMENT OF THE CASE
On January 25, 1994, the grand jury for St. John the Baptist Parish returned an indictment charging defendant with two counts of first degree murder, a violation of La.R.S. 14:30. At his arraignment on March 16, 1994, defendant pled not guilty. Subsequently, the indictment was amended to charge defendant with two counts of second degree murder, a violation of La.R.S. 14:30.1. Defendant was re-arraigned on the amended charges and again pled not guilty.
Trial was held from September 20-23, 1994. By a vote of 10-2, the jury found defendant guilty of second degree murder. On October 6, 1994, defendant moved for a new trial and judgment of acquittal or, in the alternative, for modification of judgment. The trial court denied these motions and sentenced defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Thereafter, defendant filed the instant appeal.

FACTS
Joseph Steib was the only eyewitness to the murder defendant was convicted of committing. Steib testified that on the morning of January 11, 1994, he went to Samuel "Ducky" Favoroth's house to help him with his seafood business. At about 9:00 a.m. the two men got into Favoroth's truck and drove down the street to Terry Pierce's house. Steib and Favoroth spoke outside with Pierce for about fifteen minutes. During this conversation, the men noticed a "little short guy" standing next to Favoroth's house. Not recognizing this individual, Favoroth and Steib, who were still in the truck, backed up to Favoroth's house. Favoroth asked the individual if he needed help. The man shook his head, said no, got into a waiting car and left. Favoroth and Steib then returned to Pierce's house and talked there for about five more minutes. The three men then continued their conversation in Favoroth's driveway for another ten to fifteen minutes. At that point, the car returned to Favoroth's house. A "tall dark skin guy" exited the vehicle, prompting Favoroth to get out of his truck. Favoroth recognized the individual, *66 stating, "Damn, man, I didn't know who you all was." The tall man replied, "Yeah, that's my little partner," referring to the defendant herein. The tall man then told Favoroth he had some "OZ", a slang term for ounce bags of drugs, and asked if "he wanted to check it out." Favoroth responded affirmatively, and the men proceeded inside his house. Once inside, the tall man said "Let me get the stuff out of the bag." According to Steib, the man then reached into a blue and white bag, pulled out a gun, and shot Favoroth. Steib further testified that once the tall man shot Favoroth, the defendant pulled out a gun and shot Pierce. As the defendant shot Pierce, Steib escaped by running down a hallway and jumping through a window into the yard.
Steib initially fled into a wooded area. After running past some trees, he saw Victor Nolan Baptiste, who was driving a tractor on a sugar cane farm. Baptiste testified that Steib, who appeared to be very scared, ran towards him and said that Favoroth and Pierce had just been shot. Baptiste then brought Steib on his tractor towards the highway on River Road so that he could call for help. Steib rang the doorbell at Shirley Taylor's house, told her there had been a shooting at Favoroth's house, and asked her to call the police.
Detective Sergeant Allen Weber of the St. John the Baptist Parish Sheriff's Office went to the crime scene along with several other deputies. Upon entering the residence, the police observed two black male subjects. One was lying in the kitchen area and had gunshot wounds to the abdomen; the other was in the living room and had wounds to the head and face. Meanwhile, Deputy Royal Burke picked up Steib at a local grocery and drove him to the crime scene. Deputy Burke testified that Steib described the perpetrators as two black malesa tall individual wearing a cap and a short man. Additionally, Steib told Deputy Burke that the two men were driving a Cadillac with tinted windows.
After investigating the crime scene, Detective Weber brought Steib to the sheriff's office for an interview. Upon their arrival at the sheriff's office, Detective Sergeant Destor made a composite of the two suspects based on Steib's descriptions. After completing the composite, Detective Weber brought Steib into another interview room so that he could view two mug books. The books contained hundreds of pictures of black male subjects but neither contained the defendant's picture. After going through the books, Steib advised the detective that neither one of the suspects was in the mug books. The detective then took a detailed taped voluntary statement from Steib of the events that had transpired that day.
Later, Detective Weber showed Steib two different six man photographic lineups. As with the mug books, the defendant's picture was not included in the lineups. After viewing the photos, Steib stated that the suspects were not present in either of the lineups.
On January 12, 1994, Detectives Weber and Tregre returned to the crime scene to canvas the area and to try to gather more information. Shortly afterwards, Detective Weber received a phone call advising him that Crime Stoppers in New Orleans had received a tip that a man named Dwayne Mitchell was involved in committing the crime. The tip further stated that Mitchell lived in New Orleans and drove a vehicle fitting the description of the one involved in the crime. Based on this information, Detective Weber compiled another six person photo lineup. This time the lineup contained defendant's picture. Upon viewing the lineup, Steib, within seconds, identified defendant as the person who shot Pierce. Based on this identification, the police obtained an arrest warrant for defendant as well as a search warrant for his vehicle and residence. Defendant was subsequently arrested on January 13, 1994.
Initially, defendant was represented by an attorney appointed by the Indigent Defender Board. Later, in June of 1994, defendant hired Donald Pryor to represent him. In late June, Pryor filed several pre-trial motions, including a motion for a bill of particulars, motion for discovery and request for production, and a motion to suppress evidence. On June 29, 1994, the motion hearing was continued to August 3, 1994. The trial was scheduled for September 20, 1994. On August 3, 1994, Pryor failed to appear in *67 court, and the motion hearing was continued until September 8, 1994. On that date, Pryor again failed to appear in court. The trial judge then issued an attachment for the attorney and ordered that he be brought to court on September 20, 1994. However, the attachment was recalled when Pryor appeared one hour after court adjourned.
A conference was then held in chambers. Present were the judge, Pryor, and the prosecutor. During this conference, Pryor made an oral request for a continuance of the September 20, 1994 trial date. Pryor based his request for a continuance on the fact that he was a candidate in a judicial election in Orleans Parish and thus he had not had time to prepare for the trial. Pryor assured the court that he would associate experienced, competent trial counsel no later than September 14, 1994 to try the case for him. The prosecutor objected to Pryor's request for a continuance.
Based on Pryor's representations during the conference, the trial court issued an order dated September 12, 1994. Pryor was ordered to file, on or before September 14, 1994, a written motion for continuance listing the reasons he had stated during the in chambers conference, as well as a motion to enroll additional counsel and an affidavit signed by both attorneys that they would be prepared to try the motions on September 20, 1994 and to try the case on October 18, 1994. The order concluded by continuing the trial until October 18, 1994.
On September 16, 1994, the state filed an opposition to the continuance on the basis that Pryor had not filed the motions required by the order of September 12, 1994. In response to the state's opposition, Pryor and his co-counsel, Endesha Juakali, sent a fax to the judge, apologizing for failing to timely comply with the order. Included with the fax was a motion for continuance and a motion to enroll as co-counsel signed by both Pryor and Juakali.
On September 20, 1994, Pryor was scheduled to appear in court at 9:00 a.m. for the suppression hearing. Pryor was not present when the case was called, but he showed up approximately an hour later. When the court asked Pryor whether he was ready to proceed on the motion to suppress, he replied that he would try to "accommodate" the court; however, he had another attorney, Juakali, who was enrolling as counsel of record. Pryor then again informed the court that he would be unable to adequately represent the defendant because he was involved in a judicial election in Orleans Parish that was less than ten days away. Pryor made clear to the trial judge that he had not had adequate time to prepare his case and that defendant's family had retained Juakali. Pryor then presented to the court a motion to withdraw, a motion for continuance and a motion to enroll as counsel of record. However, the trial court refused to allow Pryor to withdraw because he had failed to comply with the terms of the September 12, 1994 order.
Following the denial of Pryor's motion, Juakali addressed the court and stated that he would be willing to enroll as counsel of record provided that the case did not go to trial until October 18, 1994, as set forth in the September 12, 1994 order. After considering Juakali's argument, the trial judge stated that the case would not be continued. Consequently, Juakali refused to enroll as counsel of record. Thus, Pryor was forced to proceed with the suppression hearing on September 20, 1994, and then with the trial, which lasted from September 20-23, 1994.

ASSIGNMENTS OF ERROR
Defendant assigns the following errors: (1) any and all errors patent on the face of the record; (2) defendant was denied his Sixth and Fourteenth Amendment right to counsel of his choice; (3) defendant was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel; (4) the trial court erred in denying the motion to suppress evidence seized in the search of defendant's residence; and (5) defendant was denied his constitutional right to a fair and impartial trial by the prosecutor's hypothetical voir dire questioning.

DISCUSSION
We begin by addressing defendant's second assignment of error, as our resolution of *68 this issue is dispositive of the matter. In this assignment of error, defendant asserts that his constitutional right to counsel of his choice was violated by the court's refusal to allow Pryor to withdraw and to grant a continuance so that Juakali would enroll in the case. This refusal by the trial court, according to defendant, caused him to be represented by an unwanted, unwilling and unprepared counsel.
A defendant is guaranteed the right to assistance of counsel by both the federal and state constitutions. U.S. Const.Amend. VI; La. Const. of 1974, art. I, § 13. Specifically, Article 1, Section 13 of the Louisiana Constitution provides that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The right of a defendant to counsel of his choice is codified at La.C.Cr.P. art. 515, which provides that:
Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.
In State v. Seiss, 428 So.2d 444, 447 (La.1983), the Louisiana Supreme Court emphasized that the defendant's right to counsel of his choice "cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice." Thus, a defendant "must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings." Id. Further, the Court noted that "[a]bsent a justifiable basis, `there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications." Id. Accordingly, once the trial date has arrived, "the question of withdrawal of counsel largely rests with the discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of abuse of discretion." Id.
In Seiss, the defendant moved to withdraw his appointed counsel on the day of the trial and replace him with counsel of the defendant's choosing. The trial court denied the motion. On appeal, the defendant argued that the trial court's denial of his motion to withdraw deprived him of his constitutional right to counsel, and to effective assistance of counsel, because he was forced to proceed with the trial even though his appointed counsel had not discussed the case in detail with him and had not advised him of his constitutional rights. However, the record revealed that the appointed counsel's inability to meet with the defendant to discuss the case was due to the uncooperativeness of the defendant rather than the unavailability of the counsel. Seiss, 428 So.2d at 448. Accordingly, the court concluded that the trial court did not abuse its discretion in denying the motion to withdraw. The court noted that if the defendant was displeased from the start with his appointed counsel, he should have made earlier efforts to obtain counsel of his own choice. Because the defendant had ample time to obtain counsel of his own, the court reasoned that the motion to withdraw on the morning of trial could only be viewed as a dilatory tactic. Id.
In State v. Bond, 94-509 (La.App. 5th Cir. 1/31/95), 650 So.2d 354, the defendant sought a continuance on the day of trial so that he could replace his appointed counsel with another attorney. The trial court refused the continuance. We affirmed on the basis that the defendant's appointed attorney had filed several pre-trial motions on his behalf and had stated, on the day of trial, that he was ready to proceed. Thus, we concluded that the defendant was not entitled to a continuance. Id. at 358-59.
Having reviewed the record, we find the instant case to be distinguishable in important respects from Seiss and Bond, supra. The defendant's attorney herein stated that he was unprepared to try the case because all of his time was being spent on the judicial election in Orleans Parish. That the defense counsel neglected to diligently prepare the case is supported by numerous instances in *69 the record. For example, the attorney simply failed to attend several pre-trial hearings and also failed to timely comply with the September 12, 1994 order which would have granted defendant a continuance and an opportunity to replace his attorney with prepared, experienced counsel. In short, unlike the defendants in Seiss and Bond, the defendant herein sought to replace his attorney because he was unprepared and unwilling to try the case, rather than as a dilatory tactic. While we do not address the issue of ineffective assistance of counsel in this case, it was at least reasonable for the defendant to assume that his attorney was not going to present an adequate defense, based on the attorney's lack of preparation for the trial. Accordingly, we conclude that the defendant had a "justifiable basis" to a new choice of counsel, even on the day of the trial. See Seiss, supra.
Significantly, the trial court recognized as much in its September 12, 1994 order, which granted defendant a continuance so that he could replace his attorney. This order continued the trial date from September 20, 1994, until October 18, 1994, provided that defendant's attorney filed certain motions by September 14, 1994. When the attorney failed to comply with the requirements of the order, the court refused to continue the trial. Consequently, of course, defendant was forced to go to trial with an attorney who had not adequately prepared the case. While it is understandable that the trial judge would be upset with the defendant's attorney, particularly in light of the number of hearings that the attorney either missed or was late in attending, we must stress that the wrong party was punished by denying the continuance. The attorney's actions may likely warrant sanctions, but they cannot be imputed to the defendant who is constitutionally guaranteed the right to have an attorney at trial who has at least some opportunity to prepare a defense. See State v. Knight, 611 So.2d 1381, 1383 (La.1993) (Lemmon, J., concurring).
In summary, we conclude that under the circumstances presented here the trial court abused its discretion in denying the defendant a continuance so that he could replace his attorney. Based upon our resolution of the right to counsel issue, we need not address the other assignments of error raised by defendant. Accordingly, for the above stated reasons, defendant's conviction and sentence are reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.
DUFRESNE, J., dissents.
DUFRESNE, Judge, dissenting.
I respectfully dissent from the majority opinion.
I would affirm the defendant's conviction and sentence conditionally and remand the matter to the district court to conduct an evidentiary hearing on whether defendant received effective assistance of counsel and, if not, whether prejudice resulted from such failure. See State v. Addison, 94-2745 (La. 6/23/95) 657 So.2d 974.