WALTER J. ROTHSCHILD, Judge.
On January 25, 2001, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Larry Robertson, with theft of goods valued over $100 and less than $500 from J.C. Penny’s, a violation of LSA-R.S. 14:67.1o.[1] The Indigent Defender Board (IDB) was appointed to represent him and the defendant pled not guilty at arraignment. On April 10, 2002, the defendant’s attorney informed the trial judge that the defendant desired to represent himself, but the trial judge denied the request. The defendant filed a motion to appoint a sanity commission on June 18, 2002, and the trial judge subsequently found the defendant was competent to stand trial.
After a trial before a six-person jury, the defendant was found guilty as charged on July 25, 2002. On July 31, 2002,, the trial judge sentenced the defendant to two years of imprisonment at hard labor. On October 23, 2002, the State filed a multiple offender bill of information alleging the defendant to be a | ..second felony offender based on a 1984 armed robbery conviction, and the defendant denied the allegations therein.[2]
On June 25, 2003, the State filed another multiple offender bill of information alleging the defendant to be a third felony offender based on the 1984 armed robbery conviction and a 1980 theft conviction. That day, the court vacated the defendant’s original sentence, found the defendant was a second felony offender based on the 1984 armed robbery conviction, and resenteneed the defendant to four years at hard labor to run consecutively with a sentence the defendant received for contempt.

FACTS

On January 15, 2001, Yvette Morris and Debra Billiot, loss prevention officers for J.C. Penny’s at Oakwood Mall, were monitoring the store’s security cameras. Both ladies testified that the defendant brought six pairs of jeans into a fitting room, but exited the fitting room carrying only two pairs of jeans. Ms. Morris left her post to *877 check the fitting rooms for the other pairs of jeans. When she discovered the fitting rooms were empty, Ms. Morris advised security of the situation. Meanwhile, the defendant exited the store, but he was subsequently stopped by the store’s personnel in the parking lot.
Ms. Morris and Ms. Billiot met the group in the parking lot and discovered that the defendant was wearing the missing jeans under his own pants. The defendant was asked to return to the loss prevention room, where four pairs of jeans, which still bore the store’s price tags, were removed from the defendant. According to Ms. Morris, the total value of the jeans was $104.96. Both Ms. Morris and Ms. Billiot positively identified the defendant at trial.

DISCUSSION

|4In his sole assignment of error, the defendant contends that the trial judge improperly denied his oral motion to represent himself. The State responds that the trial judge properly denied the motion because defendant did not unequivocally urge his right of self-representation.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution give a defendant in a criminal prosecution the right to counsel and the right to represent himself. The right to counsel may be waived, but only when a defendant makes an unequivocal request to represent himself and voluntarily and intelligently waives the right to counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 2540-41, 45 L.Ed.2d 562 (1975); State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, 894, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). A defendant who vacillates between self-representation and representation by counsel will be considered to have forfeited the right to represent himself. State v. Bridgewater, supra.
Once a defendant makes an unequivocal request for self-representation, the trial judge should determine whether the defendant is competent to waive the right to counsel. Faretta v. California, supra. Although no minimum requirements have been established for judging the sufficiency of a waiver of counsel, there must be a reasonable inquiry to establish on the record a valid waiver under the overall circumstances. State v. Strain, 585 So.2d 540, 542 (La.1991); State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1065, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869.
In this case, the record reveals that the defendant did not unequivocally assert his right to self-representation. The defendant, who had been represented by IDB since February 26, 2002, first indicated that he wanted to represent himself through his attorney on April 10, 2002. That day, the matter was set for a pre-trial hearing, and the defendant began addressing the court about his multiple offender | Sstatus. During this discussion, the defendant voiced his displeasure with his appointed attorney, Anthony Angelette, because Mr. Angelette had not discussed the case with him since the defendant’s incarceration. Mr. Angelette explained that he was not sure when he was appointed to the case. The record reflects that the defendant became so animated that the court warned him to quiet down or face contempt charges. The discussion between the court, the defendant, and Mr. Ange-lette continued, and then the trial court handled other matters on the docket.
Later, Mr. Angelette informed the court that the defendant had “expressed the wish to represent himself, so to speak.” Thereafter, the defendant was sworn and the trial judge informed the defendant that *878 he had a constitutional right to counsel. The court also informed the defendant that he had a right to represent himself, but recommended against it. The court asked the defendant what was his “desire,” and the defendant responded, “My desire is to represent myself.” During the colloquy, the defendant revealed that he was literate and answered affirmatively when the court asked if he understood the legal system. He also stated that he could perform legal research.
The defendant explained that his strategy was to disprove the State’s theory of his aliases and prior convictions. However, the defendant told the judge his name was really Harry Lucas. The defendant reiterated that he did not believe it was fair that he should be multiple billed when had already served his time for the prior armed robbery conviction. Thereafter the trial judge denied the defendant’s request to represent himself:
THE COURT:
Mr. Lucas, I certainly can empathize with the fact that you think it’s unfair; but that’s not what makes the law. And therefore I’m going to deny your request to represent yourself. Because it’s an interesting argument, but it’s an argument — not an argument in law. And I’m going to order that Mr. Angelette continue to represent you.
IfiAt a contempt hearing on June 10, 2002, the defendant characterized his former motion as one for “corepresentation,” not self-representation:
BY THE DEFENDANT:
Okay. The only problem is that when I file a motion, I file a motion for the corepresentation. The motion was denied because maybe you was [sic] under the impression I was asking to represent myself. I was asking for corepresentation.
BY THE COURT:
You have got court representation. Mr. Angelette is your lawyer.
BY THE DEFENDANT:
To help my attorney I felt as though I had a Constitutional [sic] right to corepresentation.
BY THE COURT:
You’ve got court representation.
BY THE DEFENDANT:
I’m saying C-0 representation, to help.
BY THE COURT:
Corepresentation. You mean you want to represent yourself and you want Mr. Angelette to help you?
BY THE DEFENDANT:
No, I want to be allowed to also file petitions to the Court, but in reality—
BY THE COURT:
If you want to file a petition on your own behalf, you can.
Thereafter, the defendant asked for a “reassignment of attorney” because he felt Mr. Angelette had a “personal vendetta” against him, since the defendant had previously cursed at Mr. Angelette in court. The defendant explained that he wanted a new attorney so that he would not continue to lose his temper in court and continue to be found in contempt of court.
17Based on the foregoing, we find that the defendant did not unequivocally assert his right to represent himself. Rather, it is clear that the defendant wanted an attorney, but not Mr. Angelette. At best, the defendant’s remarks indicate that he wanted to actively participate in the legal process, which the court assured him that he could do. In State v. Treadway, 97-901 (La.App. 5 Cir. 3/25/98), 710 So.2d 1121, 1123, writ denied, 98-1634 (La.9/25/98), 725 So.2d 490, this Court found that the *879 defendant abandoned his motion to represent himself because he requested alternative counsel after he filed the motion to proceed pro se. In State v. Bridgewater, supra, the Louisiana Supreme Court held that the trial judge did not err in denying the defendant’s motion to represent himself because the request was not clear and unequivocal. Rather, the Bridgewater court concluded that the defendant’s request was grounded in his desire to obtain a different appointed attorney. State v. Bridgewater, supra at 895.
In Bridgewater and in the instant case, the defendants specifically stated that it was current counsel with whom they were dissatisfied. While an indigent defendant has the right to an attorney, he does not have the right to any particular attorney. State v. Bond, 94-509 (La.App. 5 Cir. 1/31/95), 650 So.2d 354, 358. Considering that the defendant told the judge that he wanted the assistance of counsel and specifically stated that the judge had misunderstood his former motion, we conclude that the trial judge did not err in denying the motion for self-representation. As pointed out by the State, the judge could have inferred that the defendant’s request was grounded in his desire to remove Mr. Angelette, not to unequivocally assert his right for self-representation. Accordingly, this assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors requiring corrective action were noted.
First, it is noted that the minute entry and the sentencing transcript conflict in that the minute entry reflects that the trial judge advised the defendant of the prescriptive period for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8, whereas the transcript does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand the matter and instruct the trial court to send appropriate written notice to the defendant of the prescriptive period for post-conviction relief, and to file written proof in the record that defendant received the notice within ten days of the rendering of the opinion. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
Second, there are numerous discrepancies between the multiple offender minute entry/commitment and the corresponding transcript of June 25, 2003. First, the transcript reflects that the State filed an amended multiple offender bill of information, whereas the minute entry/commitment does not. Further, the transcript reflects that, after the amended bill was filed, the defendant denied the allegations therein, whereas the minute entry does not.[3] Additionally, the minute entry reflects that the defendant “pleaded GUILTY [sic]” to the multiple bill, but the transcript reflects the trial judge determined the defendant’s status based on records introduced by the State of the defendant’s predicate convictions and transcripts of pre-trial proceedings.
There is an additional discrepancy between the transcript and multiple offender minute entry/commitment. While the transcript reflects that the State introduced evidence at the multiple offender hearing, the minute entry/transcript | fldoes not so reflect. The prosecutor stated that she would “reoffer, file and introduce” transcripts of the April 10, 2002 and June *880 10, 2002 proceedings in which the defendant admitted he had a previous armed robbery conviction. The prosecutor also stated that she would “submit” a certified copy of the defendant’s conviction for the armed robbery. Finally, the prosecutor stated she would “offer, file and introduce” a certified copy of the second predicate, a 1980 theft conviction.[4] None of this evidence is listed on the minute entry.
Accordingly, we remand the matter and order the district court to correct the minute entry/commitment to reflect that the State filed an amended multiple offender bill of information, that the defendant denied the allegations in the amended multiple bill, and that the trial court found the defendant to be a second felony offender. The reference in the minutes that the defendant pled guilty to the multiple bill should be deleted, and the exhibits introduced into evidence should be noted on the minute entry.

DECREE

For the reasons set forth above, we affirm the defendant’s conviction and sentence. We remand the matter and order the trial court to send written notice to the defendant of the prescriptive period for filing post-conviction relief. We further order the trial court to correct the errors in the minute entries in this case, as specified in this opinion.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

. The bill of information was subsequently amended to add seven aliases of the defendant.

. The record reflects that the defendant denied allegations in a multiple bill again on June 18, 2003.

. It should be noted that the appellate record does not contain the amended bill.

. The exhibit envelope lodged with the appellate record contains a packet of documents relating to the defendant’s prior convictions. There is a yellow note dated September 8, 2003, stating that "these papers were found in the record immediately behind the Multiple Offender Bill.” However, the documents do not contain any indication that they were marked or introduced as exhibits at the multiple offender hearing.