MARION F. EDWARDS, Judge.
 

 |2In this criminal matter, the defendant/appellant, Patrick Wilson (“Wilson”), was charged with three counts of illegal drug activity. Count one was a charge of possession of marijuana with intent to distribute, count two was a charge of distribution of cocaine, and count three was a charge of possession with intent to distribute cocaine. Wilson was arraigned and entered pleas of not guilty to all charges. A defense motion to suppress the evidence and identification was filed and denied by the trial court.
 

 Wilson was tried by a jury and found guilty as charged on all three counts. The trial judge imposed a sentence of fifteen
 
 *151
 
 years at hard labor on each count. The sentences were made concurrent, and the trial judge ordered the first two years of Wilson’s sentences on counts two and three be served without benefit of parole, probation, or suspension of sentence. Wilson was given credit for time served, and lathe trial court recommended that Wilson be placed in Blue Walters Drug Treatment while incarcerated.
 

 The State filed a multiple bill of information alleging that Wilson was a second felony offender. Wilson denied the allegations of the multiple bill and a hearing was conducted. The trial court found Wilson to be a second felony offender. The court vacated Wilson’s sentence on count two and sentenced him to an enhanced sentence of twenty years at hard labor without benefit of probation or suspension of sentence. The court ordered that the enhanced sentence was to be served concurrently with his sentences on counts one and three and again recommended the Blue Walters Drug Treatment. Wilson filed for and was granted appeals from both the original drug convictions and sentence and the adjudication on the multiple offender bill and the enhanced sentence. Both appeals have been consolidated in this Court and will be considered in this opinion.
 

 FACTS
 

 Detective John Pacaccio (“Detective Pa-caccio”), with the Jefferson Parish Sheriffs Office Narcotics Division, testified that, on June 23, 2006, he was part of a multi-jurisdictional strike force conducting undercover drug purchases. On the day in question, one of those areas was the Bee-chgrove Apartment complex. Detective Pacaccio and his partner, Agent Wiley Davis (“Agent Davis”), along with Deputy Joshua Bermudez (“Deputy Bermudez”), an undercover agent for the Jefferson Parish Sheriffs Office, and Sergeant Sam Pa-lumbo (“Sergeant Palumbo”), of the New Orleans Police Department, worked the Beechgrove Apartment complex trying to make undercover drug purchases.
 

 Deputy Bermudez went into the Bee-chgrove Apartment complex at approximately 6:00 p.m. He was driving a vehicle equipped with a VCR and a camera that faced the driver’s side window. As the deputy was driving down the Rstreet approaching 917 Beechgrove, he saw two black males. After he made eye contact with one of the men, later identified in court as Wilson, the man approached the passenger side. The other individuals who were with Wilson were yelling out to him, “If you sell it to [him] that’s going to be a sell charge.” In response, Wilson yelled back that he did not care if he “[got] a sale charge.” Deputy Bermudez testified that he told Wilson that he “wanted a 20,” which meant that he wanted $20 worth of crack cocaine. Wilson gave the deputy $20 worth of crack cocaine as requested in exchange for a $20 bill and left. Deputy Bermudez informed both Detective Pacac-cio and Agent Davis that a transaction had taken place at 917 Beechgrove. A subsequent field test by Agent Davis of the 0.1 gram “off-white, rock-like object” purchased by Deputy Bermudez was positive for the presence of cocaine.
 

 About thirty to forty minutes later, Deputy Bermudez returned with the other officers to 917 Beechgrove in order to identify the seller. When the officers entered the parking lot, Wilson was standing outside with his hands behind his back. Deputy Bermudez identified Wilson as the person from whom he had purchased the crack cocaine.
 

 Detective Pacaccio testified that he saw a group of individuals standing on the corner by the parking lot when he returned to 917 Beechgrove. Upon entering the park
 
 *152
 
 ing lot, Detective Pacaccio observed the suspect as described by Deputy Bermudez.
 

 Both Detective Pacaccio and Sergeant Palumbo testified that the individuals began to walk away when they noticed the unmarked cars. Sergeant Palumbo testified that he was walking behind Wilson when Wilson dropped “a clear plastic bag, each containing green vegetable matter, five clear orange Ziploc bags, each containing green vegetable matter, and one clear plastic bag containing eight offjwhite,6 rock-like objects.” Wilson then turned and walked into a breezeway. Detective Pacaccio testified that he started to follow Wilson until he was informed by Sergeant Palumbo that the suspect had discarded some drugs. Sergeant Palumbo retrieved the bag and turned it over to Detective Pacaccio.
 

 Evidence presented at trial showed that the orange plastic bags were $5 bags of marijuana packaged for distribution, and four bags were $20 or $25 bags of marijuana. There were also several rocks of cocaine each with a street value of $20.
 

 In the search incident to arrest, Wilson was found in possession of one $20 bill and one $5 bill that were photocopied. It was confirmed that these bills were the same ones used in the drug transaction between Deputy Bermudez and Wilson. Further, Deputy Bermudez positively identified Wilson as the man who sold him the drugs.
 

 Laurie Ann Wilson (“Ms.Wilson”), the defendant’s aunt, testified that she was inside her residence of 917-Q Beeehgrove on the day some young African-American males, including her nephew, were arrested. Ms. Wilson testified that the police stopped everyone who passed the scene. According to her testimony, only young African-American males were handcuffed on the ground. Ms. Wilson testified that her nephew was walking through the breezeway to her house after work when he was called over by the police and placed on the ground. She testified that the police ran the names of everyone and subsequently arrested them. Ms. Wilson admitted that Beeehgrove had a lot of drug activity.
 

 LAW
 

 Wilson assigns two errors for our review on appeal. In the first assignment, he asserts that he was denied his constitutional right to the counsel of his choice.
 

 | ^Wilson's argument is based on a decision of the trial court to refuse to continue the case on the scheduled trial date in order to allow James Williams to enroll as private counsel and prepare for trial. Wilson argues that his request to replace his counsel was not a dilatory tactic. He claims that he attempted to exercise his right to counsel at a reasonable time and in a reasonable manner, as well as at an appropriate stage of the proceedings, and that his actions were justifiable under the circumstances. Further, Wilson argues that the trial court’s error was not harmless because his trial counsel was ineffective.
 

 The State responds that Wilson abandoned his right to appellate review because he failed to request a transcript of the proceedings relating to this issue and further submitted the argument in brief with full knowledge that the transcript was not included. Since the record has been supplemented with the applicable transcript by order of this Court, we will address Wilson’s claim.
 

 The State argues, in the alternative, that there is no evidence to show that Wilson was denied an effective advocate as envisioned by the Sixth Amendment right to counsel.
 

 The record shows that Wilson was arraigned on August 7, 2006. On July 15, 2008 Wilson filed a request for appointed
 
 *153
 
 counsel.
 
 [1]
 
 In response to that request, Katherine Guste (“Ms. Guste”) was appointed counsel. On September 11, 2008, James Williams (“Mr. Williams”) filed a motion to enroll as counsel. On September 15, 2008, the day of the trial, both Ms. Guste and Mr. Williams appeared before the court. Mr. Williams told the trial judge that he had just been hired by Wilson’s family to represent Wilson at trial. However, Mr. Williams explained that, when he found out about the impending trial date, he informed the family that he could only take on the defense if a continuance would be granted. |7 When the trial court denied the continuance, Mr. Williams informed the court that he was not prepared for trial. The trial court denied Mr. Williams’ motion to enroll as counsel, and the trial proceeded the following day with Ms. Guste as defense attorney.
 

 The right to counsel is a fundamental constitutional right.
 
 [2]
 
 The Louisiana Supreme Court has found that it is both structural error requiring reversal, and a violation of the Sixth Amendment, when a criminal defendant has been denied his right to retained counsel of choice.
 
 [3]
 
 When the right to be assisted by counsel of choice is wrongly denied, no harmless-error analysis is required regarding counsel’s effectiveness or prejudice to the defendant.
 
 [4]
 
 The Louisiana Supreme Court stated:
 

 Deprivation of the right is “complete” when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.
 
 [5]
 

 Generally, a person accused in a criminal trial has the right to counsel of his choice.
 
 [6]
 
 However, an indigent defendant’s right to choose his defense counsel only extends so far as to allow the defendant to retain the attorney of choice, if the defendant can manage to do so, but the right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice.
 
 [7]
 

 s The defendant’s right to choose an attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.
 
 [8]
 
 There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases.
 
 [9]
 

 Given the facts of the current matter and the applicable law, we must inquire into the issue of whether the trial court’s
 
 *154
 
 decision to deny the motion for continuance prejudiced Wilson by denying him his counsel of choice.
 

 A motion for a continuance must be filed seven days prior to the commencement of trial, in writing and stating the specific grounds on which it is based.
 
 [10]
 
 The Louisiana Supreme Court has consistently held that the decision on whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and that an appellate court will not disturb such a determination absent a clear abuse of that discretion.
 
 [11]
 
 In addition, the Louisiana Supreme Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice.
 
 [12]
 

 It is well settled that a defendant in a criminal trial cannot force a postponement by a last minute change of counsel.
 
 [13]
 
 This Court has found no abuse of the trial court’s discretion in denying a motion for continuance on the day of 19trial to replace attorneys where the defendant was represented by counsel prepared for trial.
 
 [14]
 

 In his argument that the trial court abused its discretion in denying the motion, Wilson relies on
 
 State v.
 
 Mitchell.
 
 [15]
 
 In
 
 Mitchell,
 
 this Court reversed the defendant’s conviction and sentence after a finding that the trial court abused its discretion in denying a continuance to allow the defendant to replace his attorney. Because we find
 
 Mitchell
 
 to be distinguishable from Wilson’s issue, we are unconvinced by Wilson’s argument.
 

 The defendant in
 
 Mitchell
 
 claimed that the trial court’s refusal to allow his attorney to withdraw and to grant a continuance so that co-counsel could enroll as counsel of record violated his constitutional right to counsel of his choice. The defendant argued that the trial court’s refusal caused him to be represented by an unwanted, unwilling, and unprepared counsel.
 
 [16]
 

 This Court noted that the defendant’s attorney stated he was unprepared to try the case. Defense counsel also failed to attend several pre-trial hearings and to timely comply with a court order which would have granted the defendant a continuance and an opportunity to replace him with prepared, experienced counsel. We determined that the defendant attempted to replace his attorney because his attorney was unprepared and unwilling to try the case. We found that the defendant’s attempt to replace his attorney was justified and not a dilatory tactic because it was reasonable for the defendant to assume that his attorney was not going to present an adequate defense based on his attorney’s lack of preparation for the trial.
 

 |1flIn the present case, Wilson has failed to show any specific prejudice in the trial court’s denial of his motion for continu-
 
 *155
 
 anee. Wilson alleges his trial counsel was ineffective. However, these instances occurred during trial, not prior to his request for a continuance to allow private counsel to prepare for trial. Therefore, these allegations do not enter into the discussion on whether the trial court properly denied the motion for continuance prior to trial.
 

 An ineffective assistance of counsel claim is most appropriately addressed in an application for post-conviction relief filed in the trial court where a full eviden-tiary hearing can be conducted.
 
 [17]
 

 In the matter before us, the bill of information was filed on July 14, 2006. Arraignment was held on August 7, 2006, at which time Wilson informed the trial judge that he would retain private counsel. However, Wilson did not obtain private counsel and requested appointment of counsel on July 15, 2008. Therefore, Wilson had approximately two years between his arraignment and the date set for trial of September 15, 2008 to retain the attorney of his choice, if he could manage to do so. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases.
 
 [18]
 

 We find no merit in this assignment of error.
 

 In his second assignment of error, Wilson challenges his sentences. Specifically, Wilson claims that the sentences for possession with intent to distribute cocaine and marijuana, as well as his enhanced sentence for distribution of cocaine, are unconstitutionally excessive. He further claims that the trial judge |n failed to consider mitigating circumstances as part of the sentencing guidelines as required by La.C.Cr.P. art. 894.1.
 

 According to Wilson, at the time of the offense he was an eighteen-year-old employed man with strong family ties. Wilson claims his current offense did not contain any aggravating factors. There was no testimony that he resisted arrest or was in possession of a weapon when arrested. In addition, there was no testimony that he was “someone the police dealt "with before,” that he was targeted either by the task force or upon information provided by a confidential informant, or that he was known to have dealt drugs in the past. Wilson also claims that the amount of drugs sold and found in his possession was not large, and he was not found with a lot of money in his possession. He notes that his previous two convictions for possession of cocaine and unauthorized use of a movable were not crimes of violence. Wilson also asserts that the likelihood of his rehabilitation is high because of his age and his supportive family.
 

 The State contends that Wilson is precluded from raising a claim based upon the trial court’s articulation of La.C.Cr.P. art. 894.1 factors because there was no objection made at the time of sentencing. We agree. Wilson’s failure to raise the issue of compliance with La.C.Cr.P. art. 894.1 in the trial court below precludes him from raising this issue on appeal.
 
 [19]
 

 The State also responds that the trial court did not abuse its discretion in sentencing Wilson.
 

 
 *156
 
 The record reveals that Wilson failed to file a motion to reconsider sentence. A motion to reconsider sentence must be made orally at the time of sentence or in writing thereafter, setting forth the specific grounds on which the motion is based.
 
 [20]
 
 |12 Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, precludes the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
 
 [21]
 
 When there is no motion to reconsider sentence filed in the trial court, a defendant is limited to a bare review of the sentence for constitutional excessiveness.
 
 [22]
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 [23]
 
 A sentence that is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering is unconstitutionally excessive, even if it is within the statutory limits.
 
 [24]
 

 In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.
 
 [25]
 
 The three factors that are considered in reviewing a trial court’s sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts.
 
 [26]
 

 The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 [27]
 
 A trial court is afforded great discretion in determining sentences and sentences will not be set |,saside as excessive absent clear abuse of that broad discretion.
 
 [28]
 
 An appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 [29]
 

 The sentencing range for possession with intent to distribute cocaine is at least two and not more that thirty years at hard labor, with the first two years of the sentence being without benefit of parole, probation, or suspension of sentence.
 
 [30]
 

 The sentencing range on the possession with intent to distribute marijuana conviction is five to thirty years at hard labor, and a fine of not more than fifty thousand dollars.
 
 [31]
 

 Wilson’s sentences of fifteen years on each of these convictions are mid-range sentences within the statutory guidelines. Considering that Wilson committed three
 
 *157
 
 drug-related offenses on the same day, sold drugs to an undercover officer, and had additional cocaine and marijuana found in his possession, we find no merit in his argument as it relates to these sentences.
 
 [32]
 

 The habitual offender law expresses a clear legislative intent that repeat offenders receive serious sentences.
 
 [33]
 
 When an appellate court reviews a sentence on appeal, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion.
 
 [34]
 

 | uThe term of imprisonment for a second felony offender “shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.”
 
 [35]
 
 A conviction on a charge of distribution of cocaine carries a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of the sentence being without benefit of parole, probation, or suspension of sentence.
 
 [36]
 
 Thus, Wilson was facing an enhanced sentence as a second felony offender of imprisonment between fifteen and sixty years without benefit of parole, probation, or suspension of sentence for the first two years of the sentence. His actual sentence is twenty years at hard labor. Although the trial court did not restrict the first two years to withhold benefits of parole, probation, or suspension of sentence as required, the sentence is deemed to contain the required restriction and, therefore, does not require any corrective action.
 
 [37]
 

 Given the facts of this case and considering the enhanced sentence of twenty years is on the low end of the possible sentencing range, we find no abuse of the trial court’s discretion.
 

 For the foregoing reasons, we affirm Wilson’s convictions and sentences.
 

 AFFIRMED.
 

 [1]
 

 . The actual motion is not in the record. However, the chronological index states that is "on imaging.”
 

 [2]
 

 .
 
 See, State v. Reeves,
 
 06-2419 (La.5/5/09), 11 So.3d 1031.
 

 [3]
 

 .
 
 Id.
 
 at 1056 (citing
 
 United States v. Gonzalez-Lopez,
 
 548 U.S. 140, 148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006)).
 

 [4]
 

 .
 
 Id.
 

 [5]
 

 .
 
 Id.
 

 [6]
 

 . Id.
 
 at 1057.
 

 [7]
 

 .
 
 Id.
 

 [8]
 

 .
 
 State v. Leggett,
 
 363 So.2d 434, 436 (La.1978).
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 . La.C.Cr.P. art. 707.
 

 [11]
 

 .
 
 State v. Reeves,
 
 11 So.3d at 1078.
 
 See,
 
 La.C.Cr.P. art. 712.
 

 [12]
 

 .
 
 Id.
 
 at 1079 (citing
 
 State v. Blank,
 
 04-204 (La.4/11/07), 955 So.2d 90, 140,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007)).
 

 [13]
 

 .
 
 State v. Williams,
 
 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91,
 
 writ denied,
 
 01-1432 (La.4/12/02), 812 So.2d 666.
 

 [14]
 

 .
 
 State v. Divine,
 
 98-812 (La.App. 5 Cir. 5/19/99), 738 So.2d 614,
 
 writ denied,
 
 99-2393 (La.2/4/00), 754 So.2d 222,
 
 cert. denied,
 
 530 U.S. 1219, 120 S.Ct 2227, 147 L.Ed.2d 258 (2000);
 
 See also, State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445.
 

 [15]
 

 . 95-552 (La.App. 5 Cir. 7/30/96), 680 So.2d 64.
 

 [16]
 

 .
 
 Id.
 
 at 67-68.
 

 [17]
 

 .
 
 State v. Allen,
 
 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 751,
 
 writ denied,
 
 08-2432 (La.1/30/09), 999 So.2d 754.
 

 [18]
 

 .
 
 State v. Leggett,
 
 363 So.2d at 436.
 

 [19]
 

 . State v. Robinson,
 
 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 867,
 
 writ denied,
 
 08-1086 (La.12/19/08), 996 So.2d 1132.
 

 [20]
 

 . La.C.Cr.P. art. 881.1(B).
 

 [21]
 

 . La.C.Cr.P. art. 881.1(E).
 

 [22]
 

 .
 
 State v. Fairley,
 
 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 814.
 

 [23]
 

 .
 
 State v. Crawford,
 
 05-494 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669.
 

 [24]
 

 .
 
 State v. Riche,
 
 608 So.2d 639, 640 (La.App. 5 Cir.1992),
 
 writ denied,
 
 613 So.2d 972 (La.1993).
 

 [25]
 

 .
 
 Id.
 

 [26]
 

 .
 
 State v. Crawford, supra,
 
 at 670.
 

 [27]
 

 .
 
 Id.
 

 [28]
 

 .
 
 State v. Riche,
 
 608 So.2d at 640.
 

 [29]
 

 . La.C.Cr.P. art. 881.4(D).
 

 [30]
 

 . La. R.S. 40:967(B)(4)(b).
 

 [31]
 

 . La. R.S. 40:966(B)(3).
 

 [32]
 

 .We note that the trial judge did not impose a fine. There is some doubt surrounding the issue of whether a statutory fine of “not less than” a certain amount is a mandatory fine.
 
 See, State v. Phillips,
 
 02-0866 (La.11/22/02), 834 So.2d 972,
 
 cert. denied,
 
 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003), Chief Justice Calogero, dissenting; and
 
 State v. Francois,
 
 06-0788 (La.App. 3 Cir.12/13/06), 945 So.2d 865 (holding that, when the trial court does not impose a fine in a situation where the statute authorizes a fine of “not more than” a certain amount, it impliedly imposes a fine of $0 and there is no error requiring remand);
 
 State
 
 v.
 
 Kerlec,
 
 06-838 (La.App. 5 Cir.4/11/07), 957 So.2d 810, 815,
 
 writ denied,
 
 07-1119 (La.12/7/07), 969 So.2d 626. Further, the State neither objected at the lime of sentencing nor assigned this issue for our review. Accordingly we will not disturb this sentence for the failure to impose a fine.
 

 [33]
 

 .
 
 State v. Girod,
 
 04-854 (La.App. 5 Cir. 12/28/04), 892 So.2d 646, 651,
 
 writ denied,
 
 05-597 (La.6/3/05), 903 So.2d 455.
 

 [34]
 

 .
 
 Id.
 
 at 651.
 

 [35]
 

 . La. R.S. 15:529.1(A)(1)(a).
 

 [36]
 

 . La. R.S. 40:967(B)(4)(b).
 

 [37]
 

 .
 
 See,
 
 La. R.S. 15:301.1 and
 
 State v. Wiley,
 
 03-884 (La.App. 5 Cir. 4/27/04), 880 So.2d 854, 871.