428 So.2d 444 (1983)
STATE of Louisiana
v.
Charles SEISS.
No. 82-KA-0488.
Supreme Court of Louisiana.
February 23, 1983.
*445 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Edward E. Roberts, Jr., Asst. Dist. Atty., for plaintiff-appellee.
B.C. Bennett, Jr., William J. Bennett, Bennett Law Offices, Marksville, for defendant-appellant.
DIXON, Chief Justice.
Defendant, Charles Seiss, was charged by bill of information with aggravated battery of Douglas Brittian in violation of R.S. 14:34.[1] He was found guilty as charged by a six person jury. A presentence investigation was conducted and the defendant was sentenced to serve seven years at hard labor.
Defendant was convicted on March 12, 1981 and sentenced on May 21, 1981. On December 17, 1981 defendant filed an appeal for post-conviction relief, complaining of ineffective counsel and no appeal. In response to this application the trial judge, on December 28, 1981, granted defendant an out-of-time appeal. That appeal is before us; in one assignment of error, defendant argues that he had been deprived of his right to effective counsel.
On October 11, 1980, at approximately 9:00 p.m., a fight broke out at the Rapides Parish Fair in Alexandria, Louisiana between a carnival worker and the defendant. Also attending the fair were Douglas Brittian, his wife, their three children and his brother, Lynwood Brittian. Mrs. Brittian and her son were near the booth where the fight broke out, and she called to her husband to come and get their son. Mr. Brittian left his brother and his daughters to retrieve his son from the crowd gathering around the fight. He grabbed the boy by the arm and pulled him away from the crowd.
Douglas Brittian then went back to the fight and pulled the carnival worker away in an attempt to stop the scuffle. After dragging the carnival worker a few yards away, Douglas noticed that the worker had been cut and was bleeding. At the same time Lynwood Brittian attempted to restrain defendant, who had a knife. Lynwood was forced to release defendant when another man grabbed him from the back and wrestled him away from the defendant. After breaking free, the defendant ran toward Douglas and the worker swinging the knife. He stabbed Douglas in the hip; Douglas then released the carnival worker. The worker attempted to run from defendant, but slipped in some gravel. Defendant jumped on the fallen worker and repeatedly stabbed him until restrained by onlookers.
Defendant was arrested for aggravated battery and was released after posting bond. His original arraignment was continued since he was present without counsel, and the court ordered that the defendant be referred to the Indigent Defender Board. Steve Young was the counsel provided by the board. Mr. Young accompanied defendant to his arraignment on February 3, 1981. Trial was set for March 9, 1981. The case was called on March 12, 1981 and at this *446 time defense counsel filed a motion to withdraw as counsel of record. The court took up the motion outside the presence of the prospective jurors. The defense counsel explained to the court why he could not represent the defendant any longer:
"BY MR. YOUNG: Yesterday I talked with Mr. Seiss and he emphatically informed me that he had no desire at all for me to represent him. It is my position that the fiduciary relationship of attorney/client is too valuable for me to be forced to represent a client who has no confidence in my abilities, nor is he willing to co-operate with me in any manner for me to represent him. Given that lack of rapport between us, I ... I don't see how the amount of exposure that he has in this matter that I should be forced to represent him and I do not think that the administration of criminal justice in Rapides Parish would be so unduly burdened by allowing him, now that his indigency status has altered, he is employed and he is financially able to hire an attorney of his own choosing why he could not be allowed to so do and that's basically my position."
The court then asked Mr. Seiss if he had anything to say to which he responded:
"BY MR. SEISS: Yes, sir. Like he said, you know, he was appointed to me as a State lawyer and now I ... I is employed and I'd like to get a lawyer of my choice."
Although Seiss claimed to have hired Roger Royer as his attorney, Royer refused to become counsel of record unless a continuance was granted, since he was approached to represent the defendant only two days before trial. Royer communicated this to both the defense attorney and the court in conversations prior to the day of trial. Seiss had not yet paid Royer; and Royer was not present in court the day of the trial.
Young stated that he first saw the accused the day of his arraignment and had talked to him twice since then. However, he had not yet consulted and advised Seiss of all of his rights and his potential exposures. It was revealed that Young and Seiss had not had any lengthy conversations and that their one attempt to meet was fruitless; the cause of this failure to meet is still disputed by Young and Seiss.
The district attorney stated for the record that Mr. Young had been furnished with the state's entire file on the case which included every statement given to the police concerning the case. The district attorney felt that this was the reason no pretrial discovery motions had been filed.
The trial court denied the motion to withdraw and denied a continuance, noting that Mr. Young was a competent attorney. Furthermore, the trial court stated that the motion was filed the morning of the trial, and commented that the defendant "can't select or get a delay at your [his] choice."
The prospective jurors were returned to the courtroom and the trial court began by introducing the parties. In the course of the introductions, the following occurred:
"BY THE COURT: Alright, and by whom will Mr. Seiss be defended?
BY MR. YOUNG: Your Honor, I've been appointed by the Indigent Defender Board to represent Mr. Seiss, however, I have not counseled with him in regards to what his defense is to this matter, nor to... (Interrupted)
BY THE COURT: I asked you by whom would he be represented, Mr. Young. Would you state your name, please?"
When the court asked if the defense was ready to proceed, Mr. Young responded:
"BY MR. YOUNG: No, Your Honor.
BY THE COURT: Alright, sir. Do you want to state what your problem is? We are ready to proceed. You have a jury. I caution you under the Gideon Rules be careful what you say, sir.
BY MR. YOUNG: The court asked if I'm ready to proceed. My statement is that I have not counseled with the defendant as to ... (Interrupted)."
The trial court acknowledged the defense counsel's position, but he found that there was no physical impediment on the part of the defendant or defense counsel which would be a bar to proceeding, and noted *447 that defense counsel was present. The prospective jurors were then sworn in.
Defense counsel did not file any pretrial motions nor make an opening statement for the defense. However, counsel for defense is not required to make motions and objections when they are not necessary, and the defendant must show specific prejudice in order to claim that the failure to make such motions resulted in ineffective assistance of counsel. See State v. Kenner, 336 So.2d 824, 831 (La.1976); State v. Strahan, 325 So.2d 231, 233 (La.1975); State v. Scott, 283 So.2d 250, 251-252 (La.1973). Nor is defense counsel required to make an opening statement. C.Cr.P. 765. Young cross-examined all of the state's witnesses extensively. The trial court issued subpoenas for witnesses upon defendant's request. Two of these witnesses were available and were sequestered, but defense counsel did not put any evidence before the jury in defense. Young made a closing argument to the jury which attempted to point out that the state did not meet its burden of proof; that is, that the state did not prove that the defendant was guilty beyond a reasonable doubt of aggravated battery.
The defendant contends in this appeal that the trial court's ruling on the motion to withdraw denied the defendant his constitutional right to counsel, and effective assistance of counsel, since defendant was ordered to proceed with his trial even though appointed counsel stated that he had not discussed the case in detail with the defendant, and had not advised defendant of his constitutional rights.
Defendant's right to the assistance of counsel is guaranteed by both the federal and state constitutions. U.S. Const. Amend. VI; La. Const. of 1974, art. I, § 13. Further, the right of a defendant to counsel of his choice has been implemented by C.Cr.P. 515, which provides:
"Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment."
This court has consistently held that this right cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Champion, 412 So.2d 1048, 1050 (La.1982); State v. Johnson, 389 So.2d 1302, 1304 (La. 1980); State v. Jones, 376 So.2d 125, 129 (La.1979); State v. Lee, 364 So.2d 1024, 1028 (La.1978); State v. Anthony, 347 So.2d 483, 487 (La.1977). Defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Champion, supra at 1050; State v. Johnson, supra at 1304; State v. Lee, supra at 1028; State v. Leggett, 363 So.2d 434, 436 (La.1978); State v. Cousin, 307 So.2d 326, 328 (La.1975). Absent a justifiable basis, "[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications." State v. Leggett, supra at 436. Once the trial date has arrived, the question of withdrawal of counsel largely rests with the discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Leggett, supra at 436; State v. Cousin, supra at 328; State v. Boudoin, 257 La. 583, 588-89, 243 So.2d 265, 267 (1971).
In State v. Leggett, supra at 436, this court noted:
"... Rather the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge.... This court *448 has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel...."
In the present case Young first met defendant the day of his arraignment, and he thereafter spoke with him twice within the thirty-five days before the day set for trial to discuss the case. It appears that their inability to meet to gather evidence for his defense was because of the defendant's uncooperativeness and not because of any unavailability of the defense counsel.[2] All materials were provided the defense attorney by the state; thus there was no need for the defense attorney to file pretrial motions, particularly discovery motions. The court appointed defense counsel adequately cross-examined all of the witnesses for the state. The fact that he did not present an opening statement nor evidence in defense cannot be held against him since both of these choices are allowed a defense attorney as a part of trial strategy.
If defendant was displeased from the start with his court appointed attorney, he should have made earlier efforts to obtain counsel of his choice. Here incarceration did not impede defendant from obtaining counsel since he was out on bond. The defendant had ample time to obtain counsel of his choice, and the motion for withdrawal on the morning of trial can only be viewed as a dilatory tactic. See State v. Lighten, 367 So.2d 372, 375 (La.1979); State v. Hegwood, 345 So.2d 1179, 1182 (La.1977).
The trial judge did not abuse his discretion in denying the motion to withdraw.
Review of defendant's ineffective assistance of counsel claim can be made on the present record. An ineffective assistance of counsel claim is properly raised by writ of habeas corpus in the trial court. State v. Ratcliff, 416 So.2d 528, 530 (La. 1982); State v. Brown, 384 So.2d 983 (La. *449 1980); State v. Malveaux, 371 So.2d 820 (La.1979); State v. Barnes, 365 So.2d 1282 (La.1978); State v. Collins, 350 So.2d 590 (La.1977); State v. Anthony, supra; State v. Ross, 343 So.2d 722 (La.1977); State v. Mouton, 327 So.2d 413 (La.1976). "This enables the district judge in a proper case to order a full evidentiary hearing on the matter." State v. Barnes, supra at 1284. However, this court has recently held that where "the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, in the interest of judicial economy," the issue will be considered. State v. Ratcliff, supra at 530.
Here, however, the defendant filed a writ of habeas corpus with the trial court complaining that he had been denied his right to appeal and that he had been denied effective assistance of counsel. The trial court did not hold an evidentiary hearing on the issue of ineffective assistance of counsel; rather it ordered an out-of-time appeal "so that defendant can raise all issues on direct review." An evidentiary hearing is not necessary in this case because the record before us is sufficient for the determination of counsel's effectiveness at trial.
This court in State v. Ratcliff, supra at 531, adopted the following definition of effective assistance of counsel:
"... Effective counsel has been defined to mean `not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.'..."
In the instant case defense counsel's role can hardly be described as that of a neutral observer (State v. Myles, 389 So.2d 12, 31 (La.1980) (on rehearing)) and his performance at trial, particularly his cross-examination of witnesses, was competent. It appears from the record that the defense attorney was as prepared for trial as he could have been considering the defendant's uncooperative manner. The case was straightforward and uncomplicated. There were several disinterested eyewitnesses. Defense counsel had been given the prosecutor's file in advance of trial.
In State v. Landrum, 307 So.2d 345, 348 (La.1975), this court interpreted Chambers v. Marony, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970), to stand for the proposition that a defendant who alleges that his counsel was ineffective must couple that allegation with a specific showing of prejudice. Defendant, now represented by counsel other than his appointed trial attorney, offers no evidence of any prejudice occasioned by appointed counsel's continued representation. "And we are not prepared to say that prejudice is presumed where counsel alleges he was unprepared to go to trial (even if we assume that this is true) in a case such as the present where counsel was appointed" over a month before trial, spoke with defendant twice, was provided with everything the state had, competently cross-examined state witnesses at trial, and where defendant during this period was free on bond. State v. Landrum, supra at 349.
For these reasons, the defendant's conviction and sentence are affirmed.
NOTES
[1] "Aggravated battery is a battery committed with a dangerous weapon.

Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both." R.S. 14:34.
[2] The following colloquy demonstrates that appointed defense counsel was available for the defendant, and that the defendant would not cooperate with defense counsel:

"BY MR. YOUNG: The ... the time that I talked to him, he said that he was trying to get a job and if he were able to get a job he wanted to obtain someone else. Mr. Seiss and I have not gotten along. I don't know what the personality differences are, but we have not ...
BY THE COURT: I understand.
BY MR. YOUNG: ... and I've not had any in depth conversations with him. He's not presented me with any evidence that I could present to this court on his behalf because ... (Interrupted)
BY THE COURT: In other words, you ... you've been available. The information just hasn't been furnished you. Is that what you're telling me?
BY MR. YOUNG: He also claims that ... he stated on yesterday that I have not been available. I ... I disagree with that, but his position is that he's tried to contact me on several occasions and he's not been able to do so.
BY THE COURT: I have been alerted to this problem as of last week and when I talked to Mr. Young and I was aware of that and that's the reason I talked to Mr. Royer about the matter. Now, you've had a lawyer, sir, since January or February the 3rd and we are at the morning of the trial and according to the Clerk's notes, this Motion for a Continuance is now filed. Now, what do you wish to say?
BY MR. SEISS: I'd like to say this. I have actually come by his office constantly and he's... he is ... he is never in where I could bring witnesses and stuff. I have left my job. He told me the other day that ... I left my job and come straight to his office. He told me he would be there waiting on me. I come in there and his secretary tells ... told me that he was in Marksville, but he told me he would wait on me and I have left ... (Interrupted)
BY THE COURT: Well, I don't want you ... (Interrupted)
BY MR. SEISS: ... my job in the mornings and come.
BY THE COURT: Mr. Young, I didn't mean to get into a contest between you and your client.
BY MR. YOUNG: Well, that exists so the court might as well be apprised of the facts.
BY THE COURT: Alright. Well, have you been available to talk to ...
BY MR. YOUNG: My statement previously was that I don't understand my inability or my lack of being present to talk to him. On the day that he's talking about that I was in Marksville, he was supposed to have come by immediately upon getting off from work. I had a previous meeting in Marksville and when he did not show at the time that he was supposed to have showed and no one at my office apprised me of his presence, I left and went to my previous appointment.
BY THE COURT: Alright. I think I understand. Thank you very much. Thank you, Mr. Seiss."