971 So.2d 1173 (2007)
STATE of Louisiana
v.
Kedrick BURBANK, Jr.
No. 07-KA-125.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*1175 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Robert C. Jenkins, Jr., Attorney at Law, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Kedrick Burbank, appeals from his conviction for possession of cocaine within 1,000 feet of a drug free zone and his sentence as a second offender to seven and one-half years at hard labor without benefit of probation or suspension of sentence. For the reasons which follow, we affirm.
*1176 At approximately 5:50 p.m. on June 14, 2005, Officers Dominick Rodi and Joseph Lovett were on patrol in the 2600-2700 block of Huntsville Street in the Susan Park area of Kenner when they observed and approached a parked vehicle. As the officers neared the vehicle, Officer Rodi observed a clear plastic bag containing off-white rock-like objects on the center console. Defendant quickly exited the driver's side of the vehicle and started walking away at which time Officer Lovett asked Defendant to place his hands on the vehicle to facilitate a weapons search. Defendant initially seemed cooperative but then fled before complying. Officer Lovett chased Defendant and ultimately apprehended him in a nearby residence where he was hiding under the bed. The clear plastic bag was removed from the car and subsequently tested positive for cocaine.
Defendant was charged in a bill of information on August 5, 2005, with possession of cocaine within 1,000 feet of a drug free zone in violation of La. R.S. 40:981.3. He pled not guilty and proceeded to trial on January 4, 2006. A unanimous six-person jury found Defendant guilty as charged. He was sentenced to seven and one-half years at hard labor.
The State filed a multiple offender bill of information alleging Defendant to be a second felony offender based on a prior conviction for witness intimidation. Defendant admitted his status as a second felony offender and was resentenced as a multiple offender to seven years and six months imprisonment at hard labor without the benefit of probation or suspension of sentence. It is from this conviction and sentence that Defendant appeals. On appeal he assigns six errors.
ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the Defendant argues the evidence was insufficient to support his conviction for possession of cocaine within 1,000 feet of a drug free zone. He asserts the State failed to prove he knowingly possessed the cocaine. He contends that he did not own the vehicle in which the cocaine was found and did not have the requisite knowledge of the cocaine. He maintains his mere physical presence near the cocaine was insufficient to constitute possession. Defendant alleges the State failed to rebut the reasonable hypothesis of innocence that the cocaine belonged to someone else, namely, his nephew, who was related to the owner of the car in which the cocaine was found.
It is well settled that in reviewing a claim of insufficient evidence, the court considers whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
To support a conviction of possession of cocaine, the State must prove defendant was in possession of the drug and that he knowingly possessed it. State v. Wright, 05-477, p. 5 (La.App.5 Cir.12/27/05), 920 So.2d 871, 874, writ denied, 06-1141 (La.2/16/07), 949 So.2d 404.[1]
The element of possession may be established by showing the defendant exercised either actual or constructive possession of the cocaine. A person not in physical possession of a drug may have constructive possession if the drugs are *1177 under that person's dominion or control. The mere presence of the defendant in the area where a controlled dangerous substance is found is insufficient to constitute constructive possession. Id. However, the defendant's proximity to the drug may establish a prima facie case of possession when colored by other evidence. Id. at 5, 920 So.2d at 875. Guilty knowledge is an essential element of the crime of possession of a controlled dangerous substance. It is a state of mind that need not be proven as fact but may be inferred from the circumstances. State v. Robinson, 04-964, p. 5 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1121. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Id. Evidence of flight, concealment, and attempt to avoid apprehension is relevant in that it indicates consciousness of guilt. State v. Davies, 350 So.2d 586, 588 (1977).
In an identical case, State v. Wright, 05-477 (La.App. 5 Cir. 12/27/05), 920 So.2d 871, writs denied, 06-1141 (La.2/16/07), 949 So.2d 404, this Court concluded the defendant had constructive possession of the cocaine found in plain view on the center console of the vehicle he was driving, despite the fact he did not own the vehicle. This Court stated it is presumed that the sole occupant of a vehicle has dominion and control over the contents of the vehicle, including cocaine that is within the occupant's immediate reach, regardless of the ownership of the vehicle. This Court found the fact that the defendant had borrowed the car was inconsequential. We also found the evidence sufficient to show the defendant had guilty knowledge of the cocaine found in plain view in the car in which defendant was the sole occupant. This Court noted that the defendant would have seen the cocaine while driving because it was next to the stick shift. This Court cited a Second Circuit case, State v. Christopher, 561 So.2d 935 (La.App. 2 Cir. 1990), writ denied, 567 So.2d 1124 (1990), that also found sufficient evidence of guilty knowledge after noting one would expect the defendant to have noticed the cocaine while driving the vehicle since the officer readily noticed the cocaine in plain view in the vehicle in the middle of the night.
Similarly, in State v. Williams, 01-644 (La.App.5 Cir.11/27/01), 802 So.2d 909, this Court found that the defendant knowingly possessed cocaine found in plain view in a cupholder on the console of the car he was driving, even though the car belonged to another person. Upon seeing the police officers, the defendant sped up, parked, exited the car, walked into a nearby store after making eye contact with the police, and disappeared from sight. This Court concluded the defendant had custody of the car and the cocaine was in plain view and within his immediate control. His attempted avoidance of apprehension supported the inference of knowledge of the cocaine. This Court noted the defendant's non-ownership of the vehicle did not negate his control over the car and its contents.
In the present case, as in Wright and Williams, there was sufficient evidence from which a reasonable juror could have concluded Defendant knowingly possessed the cocaine while in the vehicle. Defendant was the sole occupant sitting in a vehicle in which cocaine was found in plain view on the center console between the driver's seat and passenger's seat. Officer Rodi testified the cocaine was easily seen on the center console as he approached the vehicle. Defendant exited the driver's side of the vehicle and he then attempted to flee from the police.
Defendant testified at trial that he borrowed the car from his niece and was *1178 not aware of the cocaine in the vehicle. He suggested the cocaine belonged to his nephew, to whom he had earlier given a ride. Defendant also testified he fled from the police because he was on probation and had violated the conditions of his probation. However, a juror may accept or reject the testimony of a witness in whole or in part and a reviewing court does not second-guess the credibility determinations made by the trier of fact or reweigh the evidence. State v. Crawford, 03-1494, p. 28 (La.App. 5 Cir. 4/27/04), 873 So.2d 768, 786, writ denied, 04-1744 (La.5/6/05), 901 So.2d 1083; State v. Carter, 98-24, p. 14 (La.App.5 Cir.5/27/98), 712 So.2d 701, 708, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444.
Accordingly, we find sufficient evidence in the record to support the jury verdict.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant argues he was denied his right to counsel of his choice when the trial court denied his motion to continue trial to allow his retained counsel time to appear. He contends he was forced to go to trial with appointed counsel who was unprepared for trial.
A criminal defendant has the right to counsel of his choice. State v. Leggett, 363 So.2d 434, 436 (La.1978). However, this right is not absolute and it must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. State v. Bridgewater, 00-1529, p. 20 (La.1/15/02), 823 So.2d 877, 896, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). A defendant's right to counsel of his choice cannot be manipulated "to obstruct orderly court procedure or to interfere with the fair administration of justice." Id. at 20, 823 So.2d at 896. "Absent a justifiable basis, `[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.'" Id., quoting State v. Leggett, 363 So.2d at 436. Thus, once the trial date has arrived, "the question of withdrawal of counsel largely rests with the discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of abuse of discretion." State v. Seiss, 428 So.2d 444, 447 (1983); State v. Zapata, 97-1230, p. 13 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, 1161, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443.
The record shows Defendant first advised the court at his arraignment that he had retained Bruce Netterville as his attorney and wished to have him present for the arraignment. The arraignment was continued and reset for the next day at which time retained counsel did not appear. Defendant was represented by the Indigent Defender Board (IDB) for arraignment. Defendant again advised the court he intended to hire his own attorney. Two weeks later, on August 23, 2005, a pre-trial conference was held. Retained counsel made no appearance personally or of record. IDB was appointed to represent Defendant. Trial was set for October 11, 2005. Five days later, Hurricane Katrina hit the New Orleans area.
Trial was continued three times, twice at the request of the trial court on October 11, 2005, and October 13, 2005, and once at the request of defense counsel (IDB), on December 5, 2005. Trial commenced on January 4, 2006.
On the morning of trial, Defendant's IDB counsel, Anthony Angelette, advised the trial court that Defendant informed him he had retained Robert Jenkins, who was not present, to represent him. Mr. *1179 Angelette requested a continuance on Defendant's behalf. The trial court denied the continuance and noted that Mr. Jenkins had neither signed the record nor called the court to advise of his representation. Defendant attempted to explain Mr. Jenkins' failure to make an appearance on the fact Mr. Jenkins believed no one was returning to Gretna this soon. The trial court noted that the case was public record and Mr. Jenkins had every opportunity to sign the record. Mr. Angelette had been appointed to represent Defendant on August 23, 2005, that he received Defendant's file upon the post-Katrina return of the parish in October 2005, and mailed correspondence to Defendant asking Defendant to contact him but Defendant failed to respond. Mr. Angelette stated that Defendant acknowledged he wrote to him in jail but Defendant "did not get in touch with [him]." Mr. Angelette never asserted that he was unprepared for trial. The trial court denied the motion for continuance and proceeded to trial.
In State v. Mitchell, 95-552, p. 8 (La. App. 5 Cir. 7/30/96), 680 So.2d 64, 68, this Court addressed a defendant's right to the counsel of his choice and, quoting from the Louisiana Supreme Court decision in State v. Seiss, 428 So.2d 444 (La.1983), found that the right is not absolute:
In State v. Seiss, 428 So.2d 444, 447 (La.1983), the Louisiana Supreme Court emphasized that the defendant's right to counsel of his choice "cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice." Thus, a defendant "must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings." Id. Further, the Court noted that "[a]bsent a justifiable basis, `there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.'" Id. Accordingly, once the trial date has arrived, "the question of withdrawal of counsel largely rests with the discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of abuse of discretion." Id.

In State v. Bond, 94-509 (La.App. 5 Cir. 1/31/95), 650 So.2d 354, this Court affirmed a trial court ruling denying a defendant a continuance requested on the day of trial to replace appointed counsel with retained counsel. This Court concluded the trial court did not err in denying the continuance considering the defendant's court-appointed attorney was assigned the case two months before trial, had filed several pre-trial motions, and told the trial court on the day of trial that he was ready to proceed.
Defendant relies on State v. Mitchell, 95-552 (La.App. 5 Cir. 7/30/96), 680 So.2d 64, in support of his argument. In Mitchell, this Court reversed the ruling by the trial court denying the Defendant's motion for a continuance so he could replace his attorney. However, in that case, defense counsel was retained, he failed to appear for hearings, he advised the court in advance that he would not be prepared for trial because he was running for an election, failed to file the papers the court requested for a continuance and, on the day of trial, stated that he was not prepared to try the case. Defendant had another attorney present in court and ready to enroll provided the trial was continued so he could prepare. This Court concluded the trial court abused its discretion in denying the Defendant's motion to continue the trial so he could replace his attorney.
*1180 In the present case, Defendant sought a continuance on the morning of trial to allow an attorney he contended his family had retained to represent him. This was the third time Defendant had claimed to have, or that he would get, retained counsel, without having retained counsel appear. Additionally, there was no indication Defendant was displeased with his appointed counsel at the time of trial. Defendant simply advised the trial court that he wanted the case continued for retained counsel. Despite Defendant's claim on appeal that appointed counsel was unprepared for trial, discussed below, the record indicates appointed counsel was adequately prepared for trial as demonstrated by his performance. Appointed counsel made numerous objections during the State's direct examination of witnesses, thoroughly cross-examined the State's witnesses, and presented a defense.
As pointed out by the trial court on the day of trial, the alleged retained counsel had neither made an appearance in the record nor called the court to advise of his representation of Defendant. The trial court noted the case was public record and if counsel had been retained, he had adequate time to appear. The only evidence of retained counsel was the Defendant's assertions which lacked credibility in view of his two previous similar assertions when retained counsel had not appeared. Of note, Mr. Jenkins' first appearance on the record was a motion to enroll filed on May 30, 2006, almost five months after trial. Thus, under the circumstances presented, we find no error in the trial court's refusal to grant a continuance on the morning of trial so the Defendant could retain counsel.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FIVE[2]
By this assignment of error the Defendant argues that he was denied effective assistance of counsel because his appointed counsel was unprepared for trial. In support of his claim, he cites the fact defense counsel did not receive the file until three months prior to trial and did not have contact with Defendant prior to trial. He again contends he was denied his right to counsel of choice.
Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. McIntyre, 97-876, p. 10 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. When the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. To establish the deficiency prong of the test, the defendant must show that counsel *1181 made errors so serious that he was not functioning as the "counsel" guaranteed by the Constitution. To establish prejudice, the defendant must show that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, 93-1042 at 9, 636 So.2d at 1075. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131, p. 4 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.
Other than his broad assertion that appointed counsel was "unprepared" for trial, Defendant does not allege any specific errors, acts, or omissions that constituted deficient performance or that resulted in prejudice to the Defendant. Nor have we found any in the record.
Appointed counsel in this case never once suggested he was unprepared for trial. His motion to continue was based solely on Defendant's indigent status and retention of new counsel. Although the record does not reveal whether appointed counsel had open file discovery of the prosecutor's file, he had the police report. Additionally, defense counsel was appointed over four months prior to trial. Even considering the impact of Hurricane Katrina, appointed counsel stated he received Defendant's file more than two months prior to trial. As noted above, defense counsel did not have contact with Defendant because, despite his numerous attempts to contact Defendant, and Defendant's acknowledgment of receipt of the correspondence, Defendant did not respond. Nevertheless, the record shows appointed counsel vigorously defended the case. He moved for a mistrial based on media exposure, he thoroughly cross-examined the State's witnesses, and made numerous objections based on other crimes evidence. Thus, we find the record falls far short of showing defense counsel's performance was deficient or that he failed to function as the counsel guaranteed by the Constitution.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant argues the trial court erred in denying his motion for a mistrial on the basis of the jury's exposure to media publicity. He claims his trial was corrupted when the Times-Picayune newspaper published an article concerning his trial, which was the first jury trial post-Katrina. He asserts he was prejudiced by the article because one juror admitted glancing at the newspaper the morning of trial.
The State argues that Defendant failed to prove the newspaper article caused the jurors to prejudge the case or that there was community prejudice against Defendant.
On the second day of trial, defense counsel raised the issue of prejudice from a newspaper article that appeared in that morning's paper. In response, the trial judge questioned each juror separately as to whether he or she had read the newspaper. Only one of the six jurors stated they had seen a newspaper or heard any new reports. That juror stated she had "glanced" at the paper but had not read anything about the trial. She explained she had read the headlines on the first page of the front section. She further stated she had listened to the news that morning but again stated she had not heard anything about the present trial. The juror also denied discussing the trial with anyone.
*1182 After the jurors were questioned, defense counsel reurged his motion for a mistrial on reasons previously stated and introduced the newspaper article at issue into evidence.[3] The trial court implicitly denied the motion and the matter proceeded to trial.
La.C.Cr.P. art. 775 requires that the trial court grant a mistrial on the Defendant's motion when "prejudicial conduct in or outside the courtroom makes it impossible for the Defendant to receive a fair trial[.]" Prejudicial conduct may include pre-trial or mid-trial publicity about the case. State v. Austin, 04-993, p. 22 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 883, writ denied, 05-0830 (La.11/28/05), 916 So.2d 143, citing State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053. A mistrial is a drastic remedy and determination of whether prejudice has resulted is within the sound discretion of the trial court. Id. A mistrial is not warranted unless the court determines "that the jurors were actually exposed to the publicity in question and were so impressed by it as to be incapable of rendering a fair and impartial verdict." State v. Banks, 96-2227, at 2, 692 So.2d at 1053.
In a much closer case, the Court in Banks found no error in the denial of a mistrial based on some jurors' exposure to trial publicity. Three of the six jurors admitted seeing a local newspaper article that contained general information about the trial and the charges against the defendant. The article also referenced other pending similar charges against the defendant. One of the jurors indicated he had not read the entire article. The other two jurors had read the entire article but stated they could set aside what they read and decide the case on the facts presented. In concluding a mistrial was not warranted, the Supreme Court reasoned that the two affected jurors gave emphatic and unequivocal assurances that they could be impartial and there was no "evidence that information in the news account infected the entire jury panel and became a matter of general discussion."
In the present case, the juror who had glanced at the newspaper stated she only read the headlines on the front page of the first section and had not read any article about the trial. The article at issue appeared in the Metro section of the newspaper and was titled, "Jury trials resume in Jeff." Furthermore, although the article briefly referenced Defendant's possible probation revocation if convicted on the current charge, the article's focus was on the return of the judicial system following Hurricane Katrina and not the Defendant or his charges. There is no evidence any of the jurors were actually exposed to the article at issue. Thus, we find no abuse of the trial court's discretion in denying Defendant's motion for a mistrial urged on the basis of the jury's prejudicial exposure to media publicity
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error, the Defendant argues he was prejudiced when the trial court admitted evidence of other bad acts that were immaterial to the charged crime. He specifically complains of the following evidence: 1) a picture that showed a marijuana butt in the same center console as the cocaine; 2) testimony that he broke into another person's home when he fled from the police; and 3) testimony that he was on probation at the time *1183 of the offense and had violated the conditions of the probation. Defendant maintains this evidence had no independent relevance and was used simply to show he was a bad person.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (1973). However, evidence of other crimes, wrongs or acts may be introduced when it is independently relevant or when it relates to conduct, formerly referred to as res gestae, that "constitutes an integral part of the act or transaction that is the subject of the present proceedings." La. C.E. art. 404(B)(1). A close connexity between the charged and uncharged conduct is required to insure that "`the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" State v. Noten, 01-1818, p. 2 (La.6/25/01), 791 So.2d 607, 609 (Per Curiam), quoting State v. Haarala, 398 So.2d 1093 (La.1981).
Defendant first challenges the admissibility of a photograph that showed the center console of the vehicle with a plastic baggie containing a white mixture sitting on top of what appears to be the butt of a cigarette. The State used the photograph during the testimony of Officer Rodi. Officer Rodi testified the picture depicted the clear cellophane plastic with rock-like objects that he observed in the vehicle. He confirmed the photograph showed the location of the cocaine when he first saw it. Defendant objected to the photograph on the grounds it also showed a marijuana butt under the cocaine. The trial court ruled that the marijuana was res gestae because it was part and parcel of the offense.
Upon review, we find there was no reference to marijuana in front of the jury at any time during trial. The State used the photo to show exactly what Officer Rodi observed prior to arresting Defendant. Questions about the photograph at issue were limited to the cocaine, which was prominent in the photo. No questions were asked about the object under the cocaine and no attention was brought to it. The exact location of the cocaine was an integral part of the State's case, as discussed above. Additionally, the marijuana butt is not discernible to an average person. The photo shows only a sliver of a brown colored object under the cocaine. Thus, we find no error by the trial court in allowing the photograph into evidence as an integral part of the State's case.
Defendant next complains evidence that he broke into another person's home when he fled from the police was inadmissible other crimes evidence. Defendant first objected during the prosecutor's opening statement when he stated, "Officers Lovett and Rodi gave chase to the Defendant. He ran into a house. They kicked the door down. He ran in a house, broke out a window and hid underneath the bed." Defendant objected on the basis the State was suggesting an unauthorized entry for which he was not on trial. The prosecutor explained he was simply telling the jury about the flight issue. The trial court overruled Defendant's objection.
Defendant again objected during the testimony of Officer Rodi. Officer Rodi testified that when Defendant fled from the vehicle, he was chased and ultimately located hiding under a bed inside a residence. The trial court overruled Defendant's objection explaining, "[i]t is part and parcel of the scene of this offense." Defendant *1184 asked that his objection be continuing to other crimes evidence. Officer Lovett later testified that Defendant was caught inside a residence under a bed.
As stated previously, evidence of flight, concealment, and attempt to avoid apprehension is relevant to show consciousness of guilt from which a jury may infer guilt. State v. Davies, 350 So.2d 586, 588 (La. 1977). This rule applies even though the evidence may disclose another crime. Id.
In State v. Davies, supra, the Defendant argued that evidence which revealed a "possible burglary or assault which occurred after the attempted aggravated rape for which (he) was tried, and for which he had been charged under a separate bill of information," was inadmissible evidence of other crimes or misconduct for which he was not on trial. The evidence showed Defendant fled the scene of the crime, entered the house of a third party, and resisted leaving that location. The Supreme Court held the evidence was admissible since it was evidence of flight and attempt to avoid apprehension which is relevant to proving guilt. The Supreme Court explained that, ". . . evidence as to the conduct and actions of [the] accused during the period of his flight is generally relevant, and criminal conduct by [the] accused during this period may be shown where such conduct was an inseparable part of the flight."
Similarly, in the present case, Defendant fled from the police, ran into a nearby home, and hid under a bed, all of which is evidence of flight and attempt to avoid apprehension. Therefore, this evidence was relevant and inseparable from the evidence of flight which was also an integral part of the State's case against the Defendant. We find no error in the trial court admission of the evidence at trial.
Defendant also argues testimony about his probation violations, namely associating with known felons and failing to maintain employment, was inadmissible other crimes evidence and was immaterial to the charged crime. During the State's case in chief, no testimony or reference was made to Defendant's probation status. The first mention of Defendant's probation status came from his own testimony. He testified that at the time of the charged offense he was on active probation for a prior conviction for intimidating a witness. He denied any knowledge of the cocaine in the vehicle. He stated he fled from the police because he was on probation and had violated certain conditions of his probation, namely the failure to pay probation fees and fines, for which his probation officer had previously threatened to "lock him up."
On cross-examination, the State questioned Defendant about his claim that he was unaware of the cocaine in the vehicle. Defendant suggested the cocaine belonged to his nephew, who had been in the car earlier and who Defendant knew sold "dope." The State then elicited testimony from Defendant that he knew he was not supposed to be associating with felons. The State later questioned Defendant about his activities while on probation. Defendant admitted that at the time of the offense Defendant did not have a job despite requirements of probation that he be employed. The State concluded its questioning by asking Defendant if he was still violating his probation to which Defendant responded affirmatively.
Where the defendant first testifies about other crimes he has committed or opens the door to such questioning, there is no reversible error where the state follows up on the testimony. State v. Pickrom 31,987, p. 17 (La.App. 2 Cir. 5/5/99), 732 So.2d 800, 811; State v. Cotten, 438 *1185 So.2d 1156 (La.App. 1 Cir.1983), writ denied, 444 So.2d 606 (La.1984).
Prior to Defendant's testimony in the present case, there was no mention of Defendant's probation either by the prosecutor or during the testimony of any of the State's witnesses. On direct examination, Defendant testified about his non-compliant probationary status to explain the reason why he fled from the police. Thus, the issue of Defendant's probationary status was initiated by Defendant's own testimony. This testimony "opened the door" to further questions by the State regarding Defendant's probation. Therefore, we find no error in the trial court action allowing the State to briefly pursue this line of questioning.
In summary, we find no error in the admission of any of the evidence relating to other crimes of which Defendant complains.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error, the Defendant argues that the cumulative effect of all of the above assigned errors resulted in an unfair trial. He contends that the errors in his trial cumulatively mandate reversal.
Both this Court and the Louisiana Supreme Court have been "unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction or sentence." State v. Strickland, 94-0025, p. 51 (La.11/1/96), 683 So.2d 218, 239; State v. Williams, 03-942, p. 20 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1016, writ denied, 04-0450 (La.6/25/04), 876 So.2d 832. A Defendant is not entitled to a perfect trial, only a fair one. Strickland, supra; Williams, supra.
We have determined that the foregoing assignments of error, considered individually, lack merit. The cumulative effect of assignments of error lacking merit do not warrant reversal of a conviction or sentence.
This assignment of error lacks merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record reveals no errors which require corrective action by this Court.
Accordingly, the Defendant's conviction for possession of cocaine within 1,000 feet of a drug free zone and his sentence, as a second offender, to seven years and six months imprisonment without benefit of probation or suspension of sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant, in this case, was specifically convicted of a violation of La. R.S. 40:981.3, which requires the State to additionally prove Defendant possessed the drug within 1,000 feet of a drug free zone. Defendant does not claim the State failed to prove this element of the offense. We find ample proof of this fact in the record.
[2] This assignment of error is addressed out of order because it is closely related to assignment of error number two.
[3] The trial transcript does not include defense counsel's initial request for a mistrial or his stated reasons for the mistrial. The transcript provided begins at some point after the parties began discussing the newspaper article.